UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| **SAMUEL DYCK**, individually and for others similarly situated,<br><br>v.<br><br>**PRECISION DRILLING COMPANY, LP** | Case No: 4:19-cv-1090<br><br>Collective Action<br><br>Jury Trial Demanded |

## ORIGINAL COMPLAINT

### SUMMARY

1. Precision Drilling Company, LP (Precision) did not pay Adam Dyck (Dyck) overtime as required by the Fair Labor Standards Act (FLSA).

2. Instead, Precision paid Dyck, and other Rig Managers like him, a set amount for each day (or half-day) worked, with no overtime pay if he worked more than 40 in a workweek.

3. Dyck brings this collective action to recover the unpaid overtime and other damages owed to him and other workers like him.

### JURISDICTION AND VENUE

4. This Court has federal question jurisdiction. *See* 28 U.S.C. § 1331 and 29 U.S.C. § 216(b).

5. Venue is proper in this Court pursuant to 28 U.S.C. § 1391 a significant portion of the facts giving rise to this lawsuit occurred in this District and Division.

6. Precision's headquarters is in this District and Division.

7. Dyck worked for, and was paid by, Precision in this District and Division.

### PARTIES

8. Dyck is an employee of Precision.

9. Precision paid Dyck by the day.

10. His written consent is attached.

1

11. Precision is a limited partnership.

12. Precision is a subsidiary of Precision Drilling Corporation.

13. As such, Precision is part of an enterprise that "provides onshore drilling and completion and production services to exploration and production companies in the oil and natural gas industry."

14. The Precision enterprise provides services "in all major U.S. resource plays."[1]

15. The Precision enterprise's gross revenues exceeded $100,000,000 in 2015.

16. The Precision enterprise's gross revenues exceeded $100,000,000 in 2016.

17. The Precision enterprise's gross revenues exceeded $100,000,000 in 2017.

18. The Precision enterprise's gross revenues exceeded $100,000,000 in 2018.

19. Since at least 2015, the Precision enterprise has employed at least 2 employees who handle, sell, or otherwise work on goods or materials, such as drilling rigs, tools, phones, computers, pens, and/or hard hats, that have moved in, or were produced for, commerce.[2]

20. Since at least 2015, Precision has been an enterprise covered by the FLSA.

21. Precision may be served with process by serving its registered agent.

## FACTS

22. Dyck is a Rig Manager employed by Precision.

23. Dyck has worked for Precision since 2008.

24. Precision treats Dyck as a W-2 employee and withholds taxes on this pay.

25. Dyck was a resident of Canada but worked in the United States.

---

[1] https://www.precisiondrilling.com/service-lines/us-drilling/default.aspx

[2] https://s2.q4cdn.com/639056707/files/doc_financials/annual/2018/PD_AIF_SEDAR.pdf

26. Since at least 2010, Precision has known it needed to pay Rig Managers working in the United States on a "salary basis" if it wanted to treat them as exempt from the overtime requirements of the Fair Labor Standards Act (FLSA).

27. By 2010 at the latest, Precision had been specifically instructed that it needed to pay Rig Managers a "salary," rather than simply paying them a day rate.

28. Nonetheless, until late 2018, after Dyck complained to Precision, Precision paid Dyck (and other Rig Managers like him) on a day-rate basis.

29. Dyck reported the days he worked to Precision on a regular basis.

30. Precision paid Dyck based on the number of days he worked.

31. Under its day rate policy, Precision paid Dyck a "half-day's pay" for certain days worked.

32. Dyck normally worked more than 40 hours in a week.

33. For example, in the two-week period ending May 1, 2018, Dyck worked all 14 days.

34. A typical day in the field was more than 12 hours a day.

35. In fact, Precision's Vice President admitted 16 hours a day would be a good estimate of the average work day for Dyck.

36. Thus, in each week in the period ending May 1, 2018, Dyck worked more than 84 hours.

37. Dyck did not receive any overtime pay for either week.

38. Dyck's hours are reflected, at least in part, in Precision's records.

39. Precision's records reflect Dyck worked far more than 40 hours a week.

40. However, during the period Precision paid Dyck a day-rate, Precision never paid Dyck overtime.

41. Precision's failure to pay overtime to its day-rate Rig Managers was, and is, a willful violation of the FLSA.

## COLLECTIVE ACTION ALLEGATIONS

42. Precision's illegal "day-rate" payment policy extends beyond Dyck.

43. Precision paid dozens of workers according to the same unlawful day-rate scheme.

44. Like Dyck, these employees worked as Rig Managers for Precision.

45. Like Dyck, these workers performed their work in the oilfield.

46. Like Dyck, Precision treated these workers as its admitted "employees."

47. Any differences in job duties do not detract from the fact that the day-rate workers were entitled to overtime pay.

48. The workers impacted by Precision's "day-rate" payment scheme should be notified of this action and given the chance to join pursuant to 29 U.S.C. § 216(b).

49. Therefore, the class is properly defined as:

**All Rig Managers who worked for Precision during the past 3 years while being paid on a day-rate basis.**

## CAUSE OF ACTION

50. By failing to pay Dyck and those similarly situated to him overtime at one-and-one-half times their regular rates, Precision violated the FLSA's overtime provisions.

51. Precision owes Dyck and those similarly situated to him the difference between the rate actually paid and the proper overtime rate.

52. Because Precision knew, or showed reckless disregard for whether, its pay practices violated the FLSA, Precision owes these wages for at least the past three years.

53. Precision is liable to Dyck and those similarly situated to him for an amount equal to all unpaid overtime wages as liquidated damages.

54. Dyck and those similarly situated to him are entitled to recover all reasonable attorneys' fees and costs incurred in this action.

## JURY DEMAND

55. Dyck demands a jury trial on all issues so triable.

## PRAYER

Dyck prays for relief as follows:

1. An order allowing this action to proceed as a collective action under the FLSA and directing notice to all Rig Managers who were paid on a day-rate basis;

2. Judgment awarding Dyck and those similarly situated to him all unpaid overtime compensation, liquidated damages, attorneys' fees and costs under the FLSA;

3. An award of pre- and post-judgment interest on all amounts awarded at the highest rate allowable by law; and

4. All such other and further relief to which Dyck and those similarly situated to him may show themselves to be justly entitled.

Respectfully submitted,

**BRUCKNER BURCH PLLC**

By: __/s/ Rex Burch__
    Richard J. (Rex) Burch
    Texas Bar No. 24001807
8 Greenway Plaza, Suite 1500
Houston, Texas 77046
(713) 877-8788 – Telephone
(713) 877-8065 – Facsimile
rburch@brucknerburch.com

Andrew Dunlap
Texas State Bar No. 24078444
**JOSEPHSON DUNLAP, LLP**
11 Greenway Plaza, Suite 3050
Houston, Texas 77046
713-352-1100 – Telephone
713-352-3300 – Facsimile
adunlap@mybackwages.com

DocuSign Envelope ID: BAA93D1B-87A5-4935-9577-61C102698E94

## CONSENT TO JOIN WAGE CLAIM

Print Name: Samuel Adam Dyck

1. I hereby consent to participate in a collective action lawsuit against **Precision Drilling Company LP** (and its related entities) to pursue my claims of unpaid overtime during the time that I worked with the company.

2. I understand that this lawsuit is brought under the Fair Labor Standards Act, and consent to be bound by the Court's decision.

3. I designate the law firm and attorneys at BRUCKNER BURCH PLLC as my attorneys to prosecute my wage claims.

4. I authorize the law firm and attorneys at BRUCKNER BURCH PLLC to use this consent to file my claim in a separate lawsuit, class/collective action, or arbitration against the company.

Signature: /s/ (DocuSigned, 60146766A642417)

Date Signed: 12/17/2018